### JOHN BELL v. C. C. HEARNE, et als..

A patent issued in the name of *James Bell*, in 1844, and was forwarded to the Land Office at Natchitoches, where it remained until 1849. It was then delivered to one R. T. N. by whom it was forwarded to *John Bell*, at Washington City. It was then cancelled, and a patent for the same land issued in the name of *John Bell*. *Held:* that under the evidence, the patent of *James Bell*, under whom the defendants hold, must prevail against *John Bell*. *Held:* also, that the plaintiff by his own act, having put it beyond the power of the defendants to produce the patent, parol evidence was admissible to sustain the defendant's pretensions under the patent of *James Bell*.

The moment that a patent has passed the great seal, it is beyond the power of the General Government. It may be avoided and annulled for mistake or fraud, but the question, so far as it concerns a citizen of the State, must be solved by our Courts.

APPEAL from the District Court of Caddo, *Laud*, J.
R. G. *Harper & B. L. Hodge*, for plaintiff and appellant. *Crain & Nutt*, for defendants.

VOOHIES, J. The plaintiff claims the ownership of the west half and south east quarter of section nine, in township eighteen, of range sixteen, in the district of lands subject to sale at Natchitoches, Louisiana, under a patent from the United States, dated 22d January, 1850. He alleged that the defendants,

*Columbus C. Hearne, Samuel H. Dockery,* and *Samuel R. Hearne,* have illegally taken possession of said land, and refuse to give up the same to his damage $1,000, which he claims, and also prays to be declared the legal owner of said property, and the defendants decreed to deliver the same to him.

The answer of *Dockery* contains a general denial and an averment, that he and *Alfred Dockery* purchased from *Columbus C. Hearne,* on the 8th of January, 1848, the north-west quarter of section nine, in township eighteen, of range sixteen, being a portion of the land claimed by plaintiff, on which he has put permanent improvements of the value of $400, which he claims as a *bona fide* possessor, in case of eviction.

*Columbus C. Hearne,* in his answer avers, that his title to the land in controversy is derived from *James Bell,* the immediate purchaser from the United States; that *Robert Smith* acquired the title of the latter at a Sheriff's sale, under an execution issued on a judgment in favor of *St. John, Fabre & Co.* against said *Bell,* and conveyed the same to *John N. Howell* and *Cadwalder Davis,* his vendors, whom he has called in warranty.

In his answer, *Robert Smith,* the purchaser under the Sheriff's sale, avers that *James Bell,* from whom he derived his title, was the legal owner of the land in controversy. He also pleads the prescription of ten years.

It appears from the evidence that the plaintiff and his brother, *James Bell* purchased the land in dispute from the United States on the same day, the 3d of July, 1839, and that patent certificates were issued in their respective names by the register of the land office at Natchitoches, Louisiana, bearing the same date and the same number. On the 3d of April, 1841, this land was seized and sold at Sheriff's sale, as the property of *James Bell,* under an execution issued on a judgment against him in favor of *St. John, Fabre & Co.,* and *Robert Smith* became the purchaser thereof. It appears that *James Bell,* then a resident of this State, pointed out this land for seizure.

On the 10th of July, 1844, a patent was issued in the name of *James Bell,* and forwarded to the land office at Natchitoches, where it remained until the year 1849, and was then delivered by the register to *R. T. Noel,* by whom it was forwarded, through Mr. *L. Hunton,* of New Orleans, to the plaintiff at Washington City. The testimony of *Roland Jones* shows that he examined the records of the land office at Washington and found a patent (cancelled) in the name of *James Bell,* for the land in controversy, and on the same record a patent in the name of *John Bell,* for the same land, of a date some years subsequent. He heard *John Bell* say, " that he had sent *James Bell* to Louisiana with money to enter land for him (*John Bell*) and expressed surprise that any land purchased should be in the name of *James Bell,*" *John Wilson,* the Commissioner of the General Land Office, testifies that on the 10th of July, 1844, a patent was made out in the name of *James Bell,* in accordance with the Register's return, and transmitted to the Register at Natchitoches, the 12th March following, which patent was in the usual form. He declined giving a copy of it for the reason that it had been cancelled, and the record of it was not such a record as contemplated by the Act of Congress, approved April 25th, 1812. "It appears, he says, that on the 22d of June, 1850, the Hon. *John Bell* filed a duplicate certificate of the purchase, of the Register at Natchitoches, in his favor, for the land in question, upon which, a patent in his name was made out, for the same land, by direction of my predecessor, and transmitted to him on that day, and the patent in the name of *James Bell* was cancelled. The

date of the cancellation is not given in the record. There is no written representation in reference to the matter on file or record in the General Land Office."

The plaintiff by his own act having put it beyond the power of the defendants to produce the patent, we do not think the District Judge erred in overruling his objection to the admission of parol evidence, which was the best, of which the nature of the case admitted. The reasons assigned by the Judge appear to us sufficient to sustain his ruling : " Because, from the testimony it appeared that the patent issued to *James Bell*, had been cancelled and delivered, and that it was competent to show by parol the contents of a patent which had been lost, destroyed or cancelled, and farther that it was competent to show fraud by parol ; and because the plaintiff was not taken by surprise by the offering of the testimony."

It is clear that the patent of *James Bell*, as the oldest, must prevail, unless legally cancelled. A patent is the highest evidence of title, and it has been held, the moment it has passed the great seal, it is beyond the power of the General Government. In the case of *Lott* v. *Prudhomme, et als.*, 3 R. 295, Judge *Bullard*, as the organ of the Court, says : " We do not question the doctrine sanctioned by the Supreme Court of the United States, in the case of *Wilcox* v. *Jackson*, that whenever the question arises, whether the title to property, which had belonged to the United States, has passed, the question must be resolved by the laws of the United States. But when the property has passed according to those laws, that then the property, like all other in the State, is subject to State legislation, so far as that legislation is consistent with the admission that the title passed and vested according to the laws of the United States. And further, that in an action at law, the patent from the United States, for a part of the public lands, is conclusive, unless attacked for error or fraud. 13 Peters, 498. It is true that such patent may be avoided and annulled for mistake or fraud, but that question, so far as it concerns a citizen of the State, must be solved by our own laws." Applying the doctrine recognized in that case to the present, we think it is clear, under the evidence, that the patent of *James Bell*, under whom the defendants hold, must prevail over that of *John Bell*.

It is therefore ordered and decreed that the judgment of the District Court be affirmed with costs.